STATE OF IOWA, Appellee, v. THOMAS WIGNALL, Appellant.

**Interstate commerce:** TRANSPORTATION OF LIQUOR. One who gratuitously transports intoxicating liquor shipped into this state from its railway destination to the homes of purchasers as their agent is not engaged in interstate commerce.

**Same:** STATUTE: CONSTITUTIONALITY. Code, section 2419, providing that if a common carrier or person shall transport or convey to any person within the state any intoxicating liquor, without

having first obtained a certificate from the clerk of the court showing that the consignee is a permit holder, is not unconstitutional because interfering with interstate commerce.

**Same:** TRANSPORTATION OF LIQUOR BY EMPLOYEE. Although a resident may not be legally prohibited from receiving intoxicating liquor imported from another state and carrying it to his own home for his personal use, still this fact will not prevent the legislature from prohibiting the transportation of such liquor from the railway company to a purchaser's home by an employee.

**Same:** ILLEGAL TRANSPORTATION OF LIQUOR: STATUTE: CONSTRUCTION. The term "person" as used in section 2419 of the Code, providing that if a common carrier or person or anyone as agent or employee thereof shall transport intoxicating liquors to any person within this state, etc., means a public or private carrier and not one who transports interstate shipments of liquor from the railway company to the consignee's place of residence as a mere gratuity.

*Appeal from Mahaska District Court.*—HON. W. G. CLEMENTS, Judge.

THURSDAY, DECEMBER 15, 1910.

DEFENDANT was convicted of illegally transporting intoxicating liquors, and from the judgment imposed appeals.—*Reversed.*

*Burrell & Devitt,* for appellant.

*H. W. Byers,* Attorney-General and *Chas. W. Lyon,* Assistant Attorney-General, for the State.

DEEMER, C. J.—Section 2419 of the Code of 1897, so far as material, reads as follows:

If any express or railway company, or any common carrier, or person, or any one as the agent or employee therefore, shall transport or convey to any person within this state any intoxicating liquors, without first having been furnished with a certificate from the clerk of the

court issuing the permit, showing that the consignee is a permit holder and authorized to sell liquors in the county to which the shipment is made, such company, common carrier, person, agent or employee thereof, shall upon conviction, be fined in the sum of one hundred dollars for each offense and pay the costs of prosecution, including a reasonable attorney's fee to be taxed by the court. The offense herein created shall be held committed and complete and to have been committed in any county in the state in which the liquors are received for transportation, through which they are transported, or in which they are delivered.

The information filed under this section was in five counts, each reading in substance as follows: "For that the said defendant on the 5th day of January, 1910, in the county of Mahaska and state of Iowa aforesaid, did wilfully, unlawfully, and feloniously transport intoxicating liquor, to wit, beer, over the public highway, from Eddyville, Iowa, to White City, Iowa, and did deliver one case of bottled beer to Lewis Lanphere, contrary to law."

The case was tried upon an agreed statement of facts, the material parts of which are as follows:

It is conceded that on or about the 27th day of December, 1909, various persons residing at White City, Iowa, by written orders, ordered from the Hamm Brewing Company of Rock Island, Ill., quantities of intoxicating liquor, as shown by the orders hereto attached, consisting of five orders. That in each case a money order was secured at the post office at White City and inclosed with the order. That the orders, with the money orders in payment of the same, were inclosed and sent by mail to the Hamm Brewing Company at Rock Island, Ill. That the parties sending the orders purchased the intoxicating liquor therein referred to for their own personal use in each case, and that none of said liquor was ordered by any of said persons for the purpose of selling the same within the state. That on or about the 30th day of December said orders were received by the Hamm Brewing Company at Rock Island, Ill., and were filled by them, and

that the same were shipped from Rock Island, in the state of Illinois, to White City, in the state of Iowa, consigned and properly labeled "Beer" according to law, addressed to the persons ordering the same, each in a separate package. That duplicate bills of lading which are hereto attached numbered 1, 2, 3, 4, and 5, being exhibits in the case, and by this reference made a part of the agreed statement of facts, were executed by the railroad company and filed and delivered to the agent of the Rock Island Railroad Company at Eddyville, Iowa. That White City is not upon the Rock Island Railroad, but is an inland town, situated about eight miles from Eddyville, the nearest station on said Rock Island Railroad to White City, in Mahaska County, Iowa. That each of the persons so ordering said liquor, to wit, E. J. Brugman, Frank Polito, Louie Abrahamson, L. D. Duprey, and Lewis Lanphere, gave the defendant, Thomas Wignall, an order on the Rock Island Railway Company to deliver to said Thomas Wignall the shipments of intoxicating liquor that they had previously ordered from the Hamm Brewing Company at Rock Island, Ill. That each of said persons employed said Wignall to deliver to them at White City the liquor that had been ordered from Rock Island and was carried on the Rock Island Railroad as far as Eddyville to finish the shipment from Rock Island to White City, by hauling the orders of liquor from the railroad depot at Eddyville to their residences in White City. That the said Thomas Wignall was the agent of the consignees who had ordered the liquor hereinbefore named, and was acting as their agent in hauling the liquor from the railroad station at Eddyville to their residences at White City. That the defendant, Thomas Wignall, as agent for the consignees named, presented the orders given by each of them to the agent of the Rock Island Railway at Eddyville, and said agent at Eddyville delivered to said Wignall, upon presentation of said orders, the packages of liquor that had been ordered by the parties before named, and that said Thomas Wignall, acting as agent for said parties, hauled said packages from the depot at' Eddyville to the residences and delivered the same at the residences of each of the said parties in White City; said delivery being made on or about January 5th. Order: '12-27-1909. Hamm

Brewing Company, Rock Island, Ill.—Gentlemen: Enclosed please find $1.50. Ship me, freight, one case new brew. (Signed) E. J. Brugman, Address, White City, Iowa. Agents not allowed to solicit orders. Cash must accompany orders unless parties are known to us.' The other four exhibits, being orders, are similar to the above, except as to the names. Duplicate bill of lading: The bills of lading are in the ordinary form, showing shipment by Hamm Brewing Company; consigned to E. J. Brugman; destination, Eddyville, for White City; one case bottled beer. And stamped upon said bill of lading is the following: 'Goods to be transferred at Eddyville by you to Thomas Wignall, drayman, to complete the transportation and delivery to consignee at White City.' The other four bills of lading are the same as the above, except as to the names of the parties.

Upon this record a judgment of conviction was rendered.

On this appeal it is contended that: (1) The court erred in holding that Code, section 2419, prohibited the defendant from transporting an interstate shipment of liquor that had been ordered by a citizen of Iowa from the state of Illinois for his own personal use from the depot to the residence of the party ordering the liquor, and in holding that the party ordering the liquor could have transported it himself from the depot to his residence, without violating Code, section 2419, but that the defendant could not so transport the same liquor from the depot to the residence of the party ordering the same. (2) It is claimed that, if the act is not given this construction, it is unconstitutional and void.

We do not dispute the proposition announced by many courts that a resident of the state has the right to have liquor shipped from another state for his own personal use, and that the Legislature has no power to deprive him of the right to receive such liquor and to remove it from an express or railway office to his own home or place of business. But

1. INTERSTATE COMMERCE: transportation of liquor.

the question here is, not his right to do so, but the right of another to get the goods from a carrier, and as the agent of the purchaser, and not of the carrier or shipper, deliver the same to the buyer. The agreed statement of facts does not disclose that defendant is either a public or private carrier, except that, without any compensation so far as shown and as a mere gratuity, he acted as the agent of the purchaser in hauling the packages of liquor from the depot at Eddyville to the residences of the consignees of the liquor. It will also be observed that there is no showing of any kind that the purchasers did not have the permits referred to in the section of the Code heretofore quoted. We do not think that defendant was in any manner engaged in interstate commerce.

Moreover, we are constrained to hold that the section of the law under consideration is not, when properly construed, unconstitutional, because it interferes in any way with commerce between the states. De-2. SAME: stat-ute: con-stitutionality. fendant was in no other sense than as already pointed out a carrier of the goods. He simply undertook, as agent of the consignee, to get the goods at the depot and to deliver them to the purchasers without any consideration so far as shown.

Appellant argues that, so long as the purchaser himself had the right to get the goods from the carrier and take them to his home for his own personal use, the state 3. SAME: transportation of liquor by employee. has no right to prevent his employee from doing the same act for him. But this is not sound. No reason has been given for saying that the Legislature can not prohibit one from doing for another what that other may lawfully do for himself. Certainly there is no constitutional objection to such an act. No case has been cited which so holds, and we have not been able to find one after a somewhat diligent search. *High v. State*, 2 Okl. Cr. 161 (101 Pac. 115), is not in point, for the opinion merely considers the right of a

purchaser of liquors for personal use to transport it to his own home. The drayman was discharged in that case for the reason that he did not know the contents of the barrel he was conveying. In the opinion the court, in deciding the constitutional question, discussed the case solely from the standpoint of the purchaser of the liquor. Moreover, the statute there construed read as follows: "Or who shall ship or in any way convey such liquors from one place within this state to another place therein except the conveyance of a lawful purchase as hereinafter authorized, shall be punished on conviction thereof, by fine not less than fifty dollars and by imprisonment not less than thirty days for each offense." Bunn's Const. Okl. section 499. It will thus be seen that the decision of the Oklahoma Court is not in point. No other case touches the question even incidentally.

We still have left the question of defendant's guilt under the statute. As already suggested, there is no sufficient showing that defendant was even a drayman. The case against him is no stronger than one

4. SAME: illegal transportation of liquor: statutes: construction.

where one neighbor, for the convenience of another, undertakes for a mere gratuity to get liquor ordered by the other for his personal use from the depot of a common carrier and conveys and delivers it to the purchaser. Is such an act in violation of the statute quoted? We are constrained to hold that it is not. Criminal statutes are to be strictly construed, and in case of doubt these doubts are to be solved in favor of the accused. Taking the statute by its four corners, looking to all its provisions, and applying the ordinary rules of construction thereto, we think it only applies to railway and express companies, common carriers, or other persons engaged in the carrying business, and not to private individuals acting without consideration and for the purpose of conferring a favor even though he be acting as an agent of the buyer of the goods. It

is familiar doctrine that the meaning of a word used in a statute, as "person" in the particular case, must be construed in connection with the words with which it is associated. And all words should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence.. *State v. Smith,* 46 Iowa, 670; *State v. Smiley,* 65 Kan. 240 (69 Pac. 199, 67 L. R. A. 903); *State v. Botkin,* 71 Iowa, 87; *Oakland v. Oakland,* 118 Cal. 160 (50 Pac. 277); *State v. Fry,* 186 Mo. 198 (85 S. W. 328).

While in the abstract general terms are to be given their natural and full significance, yet, where they follow specific words of a like nature, they take their meaning from the latter, and are presumed to embrace only persons or things of the kind designated by them. *Brown v. Bell,* 146 Iowa, 89; *State v. Eno,* 131 Iowa, 619; *Burlington v. Leebrick,* 43 Iowa, 252; *McBride v. Des Moines Ry. Co.,* 134 Iowa, 398; *State v. Campbell,* 76 Iowa, 122.

Defendant was not, as we have already seen, shown to have been a carrier, either public or private, and we do not think his guilt is shown by the agreed statement of facts. Moreover, except by the barest inference, there is no showing that the purchasers of the liquor did not have permits, or that the defendant did not have a certificate showing such permits.

Concluding, we may suggest that the statute does not, as the Attorney-General contends, make it unlawful for any person or corporation to. transport or convey within this state intoxicating liquors to any person within the state without a certificate, etc. If the Legislature had so intended, it would have been a very easy matter to have said so. That it did not so say is the very best reason for deciding that it did not so intend.

The trial court was in error in finding the defendant guilty under the agreed statement of facts, and its judgment must be, and it is, *reversed.*